# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **NASSR ABDULLA MOHAMED; MUHJAH ABDOALNASAR MOHAMMED AHMED; MAZEN ABULSQADER THABIT AL-AREQI; A.A., G.A., and A.A.(2);**<br><br>Plaintiffs,<br><br>v.<br><br>**MICHAEL POMPEO, et al.,**<br><br>Defendants. | 1:19-cv-01345-LJO-SKO<br><br>**MEMORANDUM DECISION AND ORDER RE PLAINTIFFS' MOTION FOR EMERGENCY WRIT OF MANDAMUS AND PRELIMINARY INJUNCTION (ECF No. 2)** |

On September 25, 2019, Plaintiffs Nassr Abdulla Mohamed ("Mohamed"), Muhjah Abdoalnasar Mohammed Ahmed ("Muhjah"), Mazen Abulsqader Thabit Al-Areqi ("Mazen"), and Plaintiffs Muhjah's and Mazen's three minor children, A.A., G.A., and A.A.(2), ("Minor Plaintiffs"), filed this action against Defendants Michael Pompeo, William Barr, Kevin Mcaleenan, U.S. Department of State, U.S. Department of Homeland Security, U.S. Department of Justice, Devin Kennington, and United States Embassy, Djibouti. ECF No. 1 ("Complaint"). On the same day, Plaintiffs filed a motion for an emergency writ of mandamus and preliminary injunction. ECF No. 2 ("TRO Motion"). The matter was set for hearing the next day, September 26, 2019. Plaintiffs' counsel appeared in person; the United States appeared telephonically. Late in the evening on September 26, 2019, the government filed a supplemental brief in opposition to the TRO Motion, to which Plaintiffs replied. ECF Nos. 11 & 12. The Court has read and considered these filings, along with the original TRO Motion, in light of the entire record.

Plaintiff Mohamed is a U.S. citizen residing in Fresno, California. Complaint ¶ 25. Plaintiffs Muhjah, Mazen, and the Minor Plaintiffs are naturalized citizens of Djibouti (collectively, "Djibouti

Plaintiffs"), who presently reside in Djibouti. *Id*. ¶ 28.

In May 2019, Plaintiff Muhjah won the diversity visa lottery for the 2019 application cycle, *id*. ¶ 60, which is a program to facilitate the immigration of eligible individuals from countries with historically low rates of immigration to the United States. *See* 8 U.S.C. § 1153(c) ("Diversity Visa Program"); *see also Iddir v. I.N.S.*, 301 F.3d 492, 494-95(7th Cir. 2002) (reviewing, generally, operation of Diversity Visa Program); *Przhebelskaya v. U.S. Bureau of Citizenship & Immigration Servs.*, 338 F. Supp. 2d 399, 400-02 (E.D.N.Y. 2004) (same). Plaintiff Muhjah alleges that she completed her diversity visa application, Complaint ¶ 74, as did Plaintiffs Mazen and the Minor Plaintiffs as derivative applicants of Plaintiff Muhjah's application. *See id*. ¶ 60.

Plaintiff Mohamed claims he intends to hire Plaintiff Mazen to establish a bank branch in the U.S., and has invested thousands of dollars in immigration fees, as well as research and attorneys' fees, on the reliance that Plaintiff Mazen's visa would be approved following the procedures set out in federal law, regulation, and agency guidance. *See id*. ¶¶ 5-10; see also TRO Motion, Ex. NN (ECF No. 2-44). Plaintiff Mohamed claims Plaintiff Mazen is uniquely qualified for the work he has been recruited to perform. TRO Motion, Ex. NN at ¶¶ 4-8.

The Djibouti Plaintiffs allege that they have completed all requirements to obtain the diversity visas, however, the visas have not been issued. Under the diversity visa program, if a visa is not issued by the end of the fiscal year in which an individual applies, here September 30, 2019, the applicants permanently lose their lottery slot. *See* 8 U.S.C. § 1154(a)(l)(I)(ii)(II).

Plaintiffs' complaint asserts three substantive causes of action. The first arises under the Mandamus Act, 28 U.S.C. §§ 1361, 1651, seeking to compel Defendants to perform a non-discretionary duty, including lawful adjudication of their visa applications. Complaint ¶¶ 84-100. The second arises under the Administrative Procedure Act ("APA"), *id*. ¶¶ 101-112, which allows a court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The third is a request for a declaratory judgment that the Defendants have failed to discharge a mandated official duty. *Id*. ¶¶

113-116.

The Supreme Court has cautioned that a "preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. Relatedly, mandamus is a "drastic and extraordinary" remedy. *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380 (2004).

Before turning to the merits of the TRO Motion, the Court must address two threshold issues. The United States has challenged the standing of all of the Plaintiffs and relatedly whether venue is proper in this district.

As to the standing of the Djibouti Plaintiffs, the United States asserts that none of them has standing because they are nonresident aliens. It is true that nonresident aliens lack standing to challenge final consular decisions under the "constitutional violation" exception to the doctrine of consular non-reviewability, *see Benjamin v. United States Dep't of State,* No. 17-CV-03587-LB, 2018 WL 1142124, at *4 (N.D. Cal. Mar. 2, 2018) (holding, based *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972), that nonresident alien does not have standing to challenge denial of visa application); *Mostofi v. Napolitano*, 841 F. Supp. 2d 208, 210-12 (D.D.C. 2012) (reviewing exception to doctrine of consular nonreviewability applicable where a U.S. citizen or legal resident plaintiff asserts that the visa decision violates a constitutionally protected liberty interest). But the consular nonreviewability doctrine is wholly inapplicable here, where (as discussed below) no visa determination has been made. *Braude v. Wirtz*, 350 F.2d 702 (9th Cir. 1965), cited by the government for the proposition that the Djibouti Plaintiffs lack standing, does not explicitly mention the doctrine of consular nonreviewability, but is woven from the same cloth as that doctrine, *see id.* at 704-05 (discussing "the manifest purpose of congress in committing to subordinate immigration officers and to the secretary of the treasury exclusive authority to determine whether a particular alien seeking admission into this country belongs to the class

entitled by some law or treaty to come into the country, or to a class forbidden to enter the United States"), so it is likewise inapplicable.[1] Having offered no other argument why the Djibouti Plaintiffs lack standing, the Court finds they do have standing to sue. As alleged and demonstrated by the submissions in Plaintiffs' TRO Motion, they have suffered an injury in fact (unreasonable delay in processing their visa application), the injury is traceable to Defendants, and a favorable decision here will redress their injury. *See Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1102 (9th Cir. 2007) (articulating basic elements of Article III standing). They also plainly fall within the zone of interest of the Diversity Visa Program. *See V. Real Estate Grp., Inc. v. U.S. Citizenship & Immigration Servs.*, 85 F. Supp. 3d 1200, 1206 (D. Nev. 2015) (inquiring, in APA challenge to visa adjudication, whether plaintiff fell within zone of interest of "relevant provisions of the Immigration and Nationality Act" and acknowledging that in the APA context the test is not "especially demanding").

The United States argued at the hearing on the TRO Motion and in their Supplemental Brief that Plaintiff Mohamed lacks standing because his connection to this case – payment of visa fees for the other Plaintiffs and offer of employment to Plaintiff Mazen – is insufficient to support his standing in a Diversity Visa Program case given that diversity visas are submitted by the visa applicant from overseas not by a United States sponsor. The Government again cites *Braude*, 350 F.2d at 703-706, for the proposition that prospective employers lack standing. But, as mentioned, *Braude* is distinguishable because it concerned a final consular determination. In addition, its articulation of standing principles, including a very narrow view of how economic injury can form a basis for standing, *id*. at 707, appears to be grossly outdated.[2] More modern jurisprudence suggests a "trend [] toward enlargement of the class

---

[1] The equally ancient Fifth Circuit case cited by Defendants, *Cobb v Murrell*, 386 F.2d 947, 951 (5th Cir. 1967), which concerned the final determination by a federal agency to deny entry to a nonresident alien whom a U.S. citizen sought to hire as a domestic worker, likewise belongs to the line of cases that involve generally nonreviewable, final consular determinations.
[2] The government's assertion that a more recent case, *Allen v. Milas*, 896 F.3d 1094, 1108 n.4 (9th Cir. 2018), "acknowledged the standing holding in Braude" is not helpful. *Allen*'s mere mention of *Braude* was part of an effort to explain why *Bruade* did not control. *Id*.

4

of people who may protest administrative action" under the APA. *Raduga USA Corp. v. U.S. Dep't of State*, 440 F. Supp. 2d 1140, 1148 (S.D. Cal. 2005) (quoting *Ass'n of Data Processing Serv. Organizations, Inc. v. Camp*, 397 U.S. 150, 154 (1970)). The expedited nature of this motion has not permitted the Court to examine thoroughly whether Plaintiff Mohamed falls within the zone of interest of the statutory scheme at issue, namely the Diversity Visa Program. *See V. Real Estate Grp.*, 85 F. Supp. 3d at 1208. Nonetheless, although the Diversity Visa Program does not provide a direct role for a potential employer, Plaintiff Mohamed's assertions of economic impact appear to be sufficient to confer standing upon him under the APA. Yet, even if Plaintiff Mohamed does not have standing, as discussed, the Djibouti Plaintiffs do.

The inquiry then turns to the issue of venue. Under 28 U.S.C. § 1391(b), a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Plaintiff Mohamed is the only direct link to this judicial district. If he has standing, then venue is undeniably proper here. Assuming he does not have standing, however, 28 U.S.C. § 1391(b)(2) does not provide venue in this district, nor is there any obvious basis for this Court to find that § 1391(b)(1) or (3) suggest venue is proper here. However, the remedy for improper venue is not necessarily dismissal. Under 28 U.S.C. § 1406, "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Given the urgent nature of this TRO motion, even assuming venue is improper in this district, the Court concludes the interests of justice would favor

transfer, rather than dismissal. Likewise, there is some authority to support action by a transferor Court prior to transfer if necessary to preserve the rights of the parties. *See Bel Canto Design, Ltd. v. MSS HiFi*, 813 F. Supp. 2d 1119, 1123-24 (D. Minn. 2011) (continuing temporary restraining order while action is moved to another venue). Here, the case was filed in this district in good faith based upon the not wholly unreasonable premise that Plaintiff Mohamed has standing and therefore that venue is proper here. Based on the undisputed representation of Plaintiffs regarding the operating hours of the embassy in Djibouti (which is apparently closed on Fridays) alongside the requirement that a successful visa applicant must arrive in the United States before the close of the FY 2019 Visa Lottery Program, the very act of transferring this case would cause the visa opportunity for Plaintiffs to expire. Therefore, the Court will evaluate the merits of the TRO Motion.

The Court agrees with Plaintiffs that the regulations implementing the Diversity Visa Program impose a mandatory duty upon consular offices to issue a decision on a visa application or a visa application that has been resubmitted after being refused. 22 C.F.R. § 42.81(a) ("When a visa application has been properly completed and executed before a consular officer in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa, refuse the visa under INA 212(a) or 221(g) or other applicable law or, pursuant to an outstanding order under INA 243(d), discontinue granting the visa."). The regulations further require that, if the visa is refused, the consular office "shall inform the applicant of the provision of law or implementing regulation on which the refusal is based and of any statutory provision of law or implementing regulation under which administrative relief is available." 22 C.F.R. § 42.81(b) (refusal procedure).

Here, the consular office has yet to issue a decision on the Djibouti Plaintiffs' visa application. To the contrary, Plaintiffs have submitted evidence indicating that, on September 5, 2019, the Djibouti Plaintiffs received a form letter from the U.S. Embassy in Djibouti indicating generally that their "visa application is refused" and that "this decision constitutes a denial of a visa." ECF No. 2-20 (TRO Motion, Ex. P). But, more specifically, of the numerous boxes that could be checked off as a

justification for denial, the form letter indicates "Other" with the explanatory handwritten phrase "administrative processing." *Id*. The Government argues that the form letter constitutes a final decision and denial, which moots Plaintiffs' claims. This Court does not agree and instead finds persuasive the reasoning of other Courts that have found the "administrative processing" designation insufficient to constitute a refusal. *See Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry*, 168 F. Supp. 3d 268, 287 (D.D.C. 2016). The U.S. Embassy in Djibouti's own communications to the Djibouti Plaintiffs suggest that the United States is continuing to process the Djibouti Plaintiff's visa applications. *See* ECF No. 10, TRO Motion, Ex. QQ (submitted at oral argument and later filed).

For the reasons stated above, the Court finds that Defendants have unreasonably delayed processing of the Djibouti Plaintiffs' visa applications in light of the impending statutory deadlines and that all other requirements for mandatory injunctive relief have been satisfied. Therefore, the Court mandates the Defendants Department of State and its agents, employees, officers, and representatives to issue a decision on the visa applications of Muhjah Abdoalnasar Mohammned Ahmed and all derivatives in Defendants' file number 2019AS2866, on or before noon California time, September 28, 2019. Otherwise the Plaintiffs will be harmed irreparably, pursuant to the mandates of 8 U.S.C. § 1154(a)(1)(I)(ii)(II). The adjudication must occur before the end of the fiscal year (this year on September 30, 2019), otherwise Plaintiffs will effectively lose permanently the opportunity to apply for the immigrant visas to reside permanently in the United States.

IT IS SO ORDERED.

Dated: **September 27, 2019**     /s/ Lawrence J. O'Neill
UNITED STATES CHIEF DISTRICT JUDGE